# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

PNC BANK,

    Plaintiff,

v.                                                        Case No. 10-CV-173

AMCRAFT BUILDING PRODUCTS CO., INC.,

    Defendants,

## DECISION AND ORDER

On March 3, 2010, the plaintiff, PNC Bank (PNC) filed a complaint against the defendant, Amcraft Building Products Co., Inc (Amcraft). The plaintiff is the secured lender of Jancor Companies, Inc. (Jancor) and contends in its complaint that the defendant owes $1,810,484.75 to Jancor. The plaintiff asserts that the defendant's failure to pay constitutes a breach of contract and that, pursuant to Wis. Stat. § 409.607, the plaintiff may enforce the defendant's obligation to Jancor.

Currently pending before this court are the parties' motions for summary judgment regarding a settlement agreement. (Docket ## 59 and 60). The plaintiff also filed a motion for a protective order. (Docket #53).

A brief review of the procedural background of this case will be helpful to an understanding of this issue. On October 25, 2010, the defendant filed a motion to dismiss, stating that the parties had settled the dispute. The motion was accompanied by an affidavit of Karl Leo, the Vice President and Chief Legal Officer of American Builders &

1

Supply Co., Inc. (ABC Supply), and a copy of an executed settlement agreement between PNC and ABC Supply. Pursuant to the terms of the agreement, all claims between Jancor and its subsidiaries and ABC Supply and its subsidiaries were settled and released. <u>See</u> Affidavit of Karl Leo, Exh. C at 1. The parties do not dispute that the impetus for drafting this agreement was a separate $5,107.84 claim by Survivor Technologies, Inc., a subsidiary of Jancor, against ABC Supply. Neither Survivor Technologies, Inc., nor ABC Supply are parties to the present action. In its motion to dismiss, the defendant asserted that because it is a subsidiary of ABC Supply, the agreement also settled the present dispute and the case should be dismissed.

The plaintiff objected to the motion to dismiss, asserting that the agreement did not evidence an intent to settle this case. The plaintiff also contended that the agreement was unenforceable due to mistake, inadvertence, surprise, excusable neglect, fraud, misrepresentation or other misconduct by ABC Supply and its attorneys.

During a telephone conference on November 16, 2010, the defendant stated that it wanted to withdraw its motion to dismiss and that it intended to file a motion for summary judgment instead. Accordingly, by an order dated November 19, 2010, the court denied the motion to dismiss without prejudice and set deadlines for the completion of limited discovery and the filing of dispositive motions related to the sole issue of whether the settlement agreement is valid and enforceable. The currently pending motions for summary judgment address only this limited issue, and the pending motion for a protective order pertains to discovery on this limited issue. The motions have been fully briefed and will be addressed herein.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits, if any, establish that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); McNeal v. Macht, 763 F.Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that under the applicable substantive law "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. In determining whether a genuine issue of material fact exists, the court must consider the evidence and all reasonable inferences in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587 (1986), Matter of Wade, 969 F.2d 241, 245 (7th Cir. 1992). The burden of showing the needlessness of a trial – (1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law – is upon the movant. However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. Anderson, 477 U.S. at 248; see also, Celotex Corp., 477 U.S. at 324; Fed. R. Civ. P. 56(e).

The evidence relied upon in a motion for summary judgment must be of a kind that would be admissible at trial. See Waldridge v. American Hoechst Corp., 24 F.3d 918, 921 n.2 (7th Cir. 1994) (citing Gustovich v. AT & T Communications, Inc., 972 F.2d 845, 849 [7th Cir. 1992]). The Federal Rules of Evidence prohibit the admission of hearsay. See Fed. R. Evid. 802. Hearsay evidence, therefore, does not meet this evidentiary requirement. See Schindler v. Seiler, 474 F.3d 1008, 1012 (7th Cir. 2007). Evidence

3

which is not relevant to the issues before the court, even though undisputed, has not been included in the undisputed facts. Fed. R. Evid. 402 (Irrelevant evidence is not admissible).

To the extent that an objection to a proposed finding of fact fails to cite specific evidentiary support, the objection has no weight. See Schneiker v. Fortis Ins. Co., 200 F.3d 1055, 1057 (7th Cir. 2000); Doe v. Cunningham, 30 F.3d 879, 881 (7th Cir. 1994). Moreover, to the extent that an objection is non-responsive to the proposed finding of fact, the objection does not create a dispute of fact.

## **STATEMENT OF MATERIAL UNDISPUTED FACTS[1]**

On July 31, 2006, Amcraft entered into a Distribution and Private Label Agreement with Heartland Building Products, Inc. (Heartland), under which Amcraft agreed to purchase certain PVC vinyl siding, soffit, and related accessories.

On October 30, 2008, Jancor filed for bankruptcy in the United States Bankruptcy Court for the District of Delaware, Petition No. 08-12556-MFW (Jancor Bankruptcy), listing its subsidiaries, including Heartland and Survivor, as co-debtors. Upon the filing of the Jancor Bankruptcy, PNC became the owner of the accounts receivable of Jancor and its subsidiaries, including Heartland and Survivor, pursuant to a Revolving Credit and Security Agreement entered into between PNC and Jancor, and Jancor's subsidiaries on July 29, 2005.

This action was filed on March 3, 2010, by PNC Bank (PNC) against Amcraft Building Products Co., Inc. (Amcraft) in an attempt to recover receivables (the Amcraft Account) assigned to PNC as the secured lender of Jancor. At all times, Attorneys

---

[1] As a general matter, unless accompanied by citation, the relevant facts are taken from the stipulated facts and the parties' proposed findings of fact which are not disputed. Citations to sources of quoted excerpts have been included even when those excerpts are undisputed.

4

George R. Hicks, Kevin D. Trost, and Michael F. Schmitz were the only counsel of record for the plaintiff as listed on the docket of this case. Amcraft was served with the complaint on March 15, 2010. Attorney Michael Dunn was retained by Attorney Karl Leo, the owner of Leo Law, LLC, and Vice President and Chief Legal Officer of ABC Supply, to represent Amcraft in this case.

James Steffy is Vice President and Relationship Manager at PNC. Mr. Steffy is responsible for the Jancor receivables at PNC. Scott Weltman was Mr. Steffy's initial contact at the Weltman law firm and overall Attorney Weltman is in charge of the attorney-client relationship. As files are handled by a particular attorney at the Weltman firm, Mr. Steffy has contact with that attorney. The Weltman firm is under instructions to obtain approval to settle any case.

Andrew Voorhees is a full time attorney with the Weltman firm. Attorney Voorhees has worked at the Weltman firm for approximately eight years. At Weltman, Attorney Voorhees is a member of the Special Collections group, "[a] group designed to pursue tough debtors, tough debtor businesses to achieve collection of our client's claims." (Plaintiff's Opposition to Defendant's Motion for Summary Judgment [Plaintiff's Opposition Brief], Exh. 2 at 4-5). Attorney Voorhees handled 67 or 68 Jancor files for PNC, including five settlements.

One such matter Attorney Voorhees was involved with was the collection of sums from ABC Supply 622. On June 23, 2010, Attorney Voorhees sent a demand letter to Attorney Leo regarding a claim of $5,107.84 owed by ABC Supply 622 to Survivor (the ABC Supply 622 Account). No other claims were addressed in this demand letter. On June 28, 2010, Attorney Voorhees received an email correspondence from Attorney

5

Case 2:10-cv-00173-LA    Filed 08/30/12    Page 5 of 15    Document 66

Leo, requesting additional information and support of the account. This email correspondence did not mention any claims other than the accounts receivable of $5,107.84 due and owing by ABC Supply 622. Further, this email correspondence did not mention that PNC had a pending lawsuit against Amcraft, or that ABC and Amcraft were in any way related entities.

On June 30, 2010, Attorney Voorhees sent a correspondence to Attorney Leo, enclosing invoices issued by Survivor to ABC Supply 622, totalling an outstanding balance due of $5,107.84. No other claims were addressed in this correspondence or its enclosures. This litigation was pending on June 30, 2010. However, Amcraft and its counsel did not notify Attorneys Hicks, Trost, or Schmitz of the ABC Supply 622 account.

On September 3, 2010, Attorney Voorhees received a telephone call from Attorney Gregory Revera, of Leo's law firm, Leo & Brooks, LLC. During that telephone call, Attorney Revera requested that Attorney Voorhees draft and email a settlement agreement to his attention. At no time during that telephone conference did Attorney Revera discuss or even mention that PNC had a pending lawsuit against Amcraft or that ABC and Amcraft were in any way related entities. Attorney Revera also did not discuss or even mention resolving any claims other than Survivor Technologies' accounts receivable claim of $5,107.84 against ABC Supply 622. On September 3, 2010, Attorney Voorhees sent Attorney Revera an email correspondence attaching a proposed Settlement and Mutual Release Agreement (Settlement Agreement) for resolution of the ABC Supply 622 account. The relevant portion of the proposed Settlement Agreement reads as follows:

6

> This Agreement is made and entered into this ___ day of ____ 2010 between PNC Bank, N.A. and ABC Supply with reference to the following:
>
> 1. Certain disputes and controversies have arisen between the parties hereto arising out of and related to the purchase of goods and materials from Survivor Technologies, Inc., the predecessor in interest to PNC Bank, N.A., for which an alleged balance remains due.

(Plaintiff's Brief in Support of its Motion for Summary Judgment [Plaintiff's Opening Brief], Exh. C-5 at 2).

On September 28, 2010, Attorney Revera sent Attorney Voorhees the proposed changes to the Settlement Agreement. The revised Settlement Agreement does not mention Amcraft, Heartland, or the Amcraft Account. The relevant portion of the revised Settlement Agreement reads as follows, with Attorney Revera's proposed revisions shown in bold:

> This Agreement is made and entered into this ___ day of ____ 2010 between PNC Bank, N.A. and ~~ABC~~ **American Builders and Contractors** Supply **Co., Inc., and its subsidiaries (together "ABC")** with reference to the following:
>
> 1. Certain disputes and controversies have arisen between the parties hereto arising out of and related to the purchase of goods and materials from **subsidiaries of Jancor Companies Inc., including but not limited to** Survivor Technologies, Inc**. (together, "Jancor")**, the predecessor**s** in interest to PNC Bank, N.A., for which an alleged balance remains due.

(Plaintiff's Opening Brief, Exh. C-4 at 2).

Attorney Voorhees reviewed the mark-ups proposed by Attorney Revera. In his review of the proposed changes, Attorney Voorhees did not seek assistance from his colleagues at the Weltman firm. Attorney Voorhees was competent to interpret the language of the agreement. Attorney Voorhees undertook no investigation to determine the subsidiaries of ABC Supply or those of Jancor because, as he testified, "based upon all communications up to this point, my belief was the parties were intending to resolve

7

ABC Supply 622 case only." (Plaintiff's Opposition Brief, Exh. 2 at 50). Attorney Voorhees has no limitation on his actual authority to sign a document on behalf of PNC, provided he perceives there to be 100% payment on a claim. He has executed other settlement agreements on behalf of PNC. Attorney Voorhees "had the authority to execute the [settlement agreement]" as to the ABC Supply 622 claim. (Plaintiff's Opposition Brief, Exh. 2 at 17, 50).

Attorney Voorhees incorporated Attorney Revera's revisions and executed the settlement agreement on September 29, 2010, as attorney for PNC in his representation of PNC relating to the collection of the ABC Supply 622 Account. On September 29, 2010, Attorney Leo executed the settlement agreement on behalf of ABC Supply 622 and its subsidiaries and caused the settlement funds to be forwarded as required by the Settlement Agreement. PNC negotiated the settlement payment on or about October 4, 2010.

Mr. Steffy had communications with Attorney Voorhees related to the Jancor claim against ABC Supply 622, including the topic of a settlement agreement. The conversations took place prior to the September 29, 2010, execution of the Settlement Agreement. Mr. Steffy "almost certainly" had a conversation with Attorney Voorhees concerning the Settlement Agreement. (Plaintiff's Opposition Brief, Exh. 1 at 24). Attorney Voorhees was likely given "authority to do whatever needed to be done to collect the funds once [PNC] gave him the authority to settle." Id.

Despite multiple communications, neither Attorney Leo nor Attorney Revera ever mentioned or otherwise referred to Amcraft, Heartland, the Amcraft Account, or this pending litigation. Further, despite multiple communications, neither Attorney Leo nor

Attorney Revera ever mentioned or otherwise referred to resolving any claims other than the ABC Supply 622 Account.  Moreover, this litigation was pending on June 30, September 3, September 28, and September 29, 2010, all dates relevant to the negotiation, drafting, and execution of the Settlement Agreement.  However, Amcraft and its counsel did not notify Attorneys Hicks, Trost, or Schmitz, the attorneys of record for PNC in this case, of the drafting, editing, or execution of the Settlement Agreement until October 12, 2010, when Attorney Trost was notified that PNC needed to dismiss this litigation.  Attorneys Leo and Revera also did not notify Attorney Dunn, Amcraft's counsel of record in this action, of the negotiation and execution of the Settlement Agreement.

## **ANALYSIS**

The plaintiff asserts that summary judgment should be awarded in its favor because the real intent of the parties should govern the interpretation of the Settlement Agreement.  The plaintiff maintains that the real intent was to settle the ABC Supply 622 account only.  In the alternative, the plaintiff contends that even if the Settlement Agreement is interpreted to release the Amcraft account, the Settlement Agreement is void based on the misconduct of Amcraft and its counsel.  Specifically, the plaintiff asserts that Amcraft's counsel committed a number of professional and ethical violations which would render the Settlement Agreement void.  The plaintiff also contends that the Settlement Agreement is void because the consideration is inadequate and/or indicative of mistake or fraud.

The defendant maintains that summary judgment should be granted in its favor. In support, the defendant states that the Settlement Agreement is unambiguous and

therefore, the court may not consider any extrinsic evidence regarding the intent of the parties.  In response to the plaintiff's assertions, the defendant contends that its attorneys did not violate any ethical or professional rules.  The defendant also maintains that the consideration is sufficient and the Settlement Agreement is not void.

As an initial matter, this court notes that the parties did not address which state's laws apply.  However, both parties applied Wisconsin law, so this court will do the same.[2]

In Wisconsin, settlement agreements and other releases are viewed as contracts. See Dietrich v. Treck Bicycle Corp., 297 F. Supp. 2d 1122 (W.D. Wis. 2003).  When construing contracts, the goal "is to ascertain the true intentions of the parties as expressed by the contractual language."  Rebholz v. Lakeland Leisure Corp., 2011 WI App. 136, ¶ 9, 337 Wis. 2d 426 (Wis. App. 2011) (quoting Town Bank v. City Real Estate Development, LLC, 2010 WI 134, ¶ 33, 330 Wis. 2d 340 [Wis. 2010]).  The "best indication of the parties' intent is the language of the contract itself."  Id.  The contract language should be construed according to its plain and ordinary meaning.  If the contract is unambiguous, "our attempt to determine the parties' intent ends with the four corners of the contract, without consideration of extrinsic evidence."  Id.  (quoting Huml v. Vlazny, 2006 WI 87, ¶ 52, 293 Wis. 2d 169, 716 N.W.2d 807 [Wis. 2006]).

A recent opinion from the Wisconsin Court of Appeals explains that courts consider "not only the language of the release, but also 'the surrounding conditions and circumstances.'"  Rebholz, 2011 WI App. at ¶ 9 (quoting Brown v. Hammermill Paper

---

[2] While the parties never directly briefed this issue, it was superficially addressed.  The defendant cited to a number of cases from the court of appeals for this circuit.  However, when the plaintiff pointed out that those cases applied Indiana or Illinois law, the defendant responded by relying on Wisconsin law.  Therefore, the court assumes that the parties agree that Wisconsin law applies to this case and will proceed accordingly.

10

Co., 88 Wis. 2d 224, 233-34 [1979]) (internal citations omitted); see also, Sellars Absorbent Materials, Inc. v. Sustainable Textile Group, LLC, 2012 U.S. Dist. LEXIS 45920, at *8 (E.D. Wis. Apr. 2, 2012) ("[T]he [contract] language should be read consistent with what a reasonable person would understand the words to mean under the circumstances.")(citing Seitzinger v. Community Health Network, 2004 WI 28, 270 Wis. 2d 1, 15 [Wis. 2004]). For example, the court may consider whether the plaintiff received "'full satisfaction or that which the law must consider as such' in determining the nature and scope of the release." Rebholz, 2011 WI App. at ¶ 9.

Thus, despite the defendant's contention that this court's review is limited to the four corners of the Settlement Agreement, the language in the Settlement Agreement will be construed in light of the "surrounding conditions and circumstances." Rebholz, 2011 WI App. at ¶ 9. A review of the undisputed facts shows that neither Attorney Voorhees nor Attorneys Revera and Leo[3] mentioned or discussed the Amcraft Account in written correspondence or verbal discussions of the Settlement Agreement. The Settlement Agreement itself does not specifically name Amcraft. Amcraft's own counsel of record in this action, Attorney Dunn, was not notified of the drafting or execution of the Settlement Agreement. In addition, the settlement amount is $5,107.84 – the exact amount owed on the ABC Supply 622 Account. Perhaps most importantly, the settlement amount of slightly more than $5,000 is much less than the amount at issue in this case, which is $1,810,484.75. The discrepancy between the damages claimed in this case and the amount in the Settlement Agreement is so great that this court cannot consider it "full satisfaction" of the plaintiff's claim. Id.

---

[3] The court notes that Attorney Revera is listed on the docket for this case as an attorney of record for the defendant in addition to working on the Settlement Agreement. Attorney Leo has not filed a notice of appearance in this case.

The defendant notes that the court in Rebholz limited its review of the contract to the four corners of the document. However, a review of the facts in Rebholz shows that "not a single piece of evidence outside the release itself was offered to prove that the parties intended it to be anything other than what it was." Id. at ¶ 22. In addition, the plaintiff in Rebholz had "set forth no evidence showing" that he was not adequately compensated. Id. In contrast, in this case, there is ample evidence that the parties did not intend the Settlement Agreement to pertain to this case and that the amount in controversy greatly exceeds the settlement amount. Although the defendant contends that the plaintiff received a mutual release and that the claims at issue here are without value, the court notes that whether the claims in this case are without value is a contested issue. The plaintiff maintains that the claims in this case are valued at over $1,800,000.

The defendant also repeatedly asserts that PNC hired the Weltman firm, not individual attorneys at the firm, in support of its argument that Attorney Voorhees should have known of the Amcraft Account because he was a member of the Weltman firm. However, the defendant fails to cite any law supporting the contention that, because a party has retained a lawyer at a multi-attorney firm, the defendant may have contact with any other attorney at that firm and settle a claim without involving the attorneys of record in the case being settled or ever discussing or mentioning the claim. The facts show that Attorney Revera was listed as an attorney for the defendant in this action and was intimately involved with the negotiation and drafting of the Settlement Agreement. The facts also show that Attorney Voorhees, the only opposing attorney with whom Attorney Revera discussed the Settlement Agreement, was not listed as an attorney of

12

record in this case. Thus, in light of the conditions and circumstances surrounding the execution of the Settlement Agreement, this court finds that the parties' intent was to settle the ABC Supply 622 Account only. Accordingly, the Settlement Agreement does not apply to this case.

Even if this court were to agree with the defendant that Wisconsin law limits the court's review of the Settlement Agreement to the four corners of the document, the court finds that the Settlement Agreement does not apply to this case. In Town Bank, a case upon which the defendant relies, the Supreme Court of Wisconsin wrote that a contract "though clear on its face, may be considered latently ambiguous if its application produces absurd or unreasonable results that the parties could not have intended." 2010 WI 134, ¶ 49 (citing Stevens Construction Corp. v. Carolina Corp., 63 Wis.2d 342, 354, 217 N.W.2d 291 [1974]).

Here, application of the Settlement Agreement to this case would result in the settlement of a $1,810,484.75 claim for slightly over $5,000. Given the disparity in the amounts, this court finds that result sufficiently unreasonable to render the Settlement Agreement latently ambiguous. A court may look to extrinsic evidence to determine the parties' intent when the contract is ambiguous. Town Bank, 2010 WI ¶ 33. Here, the undisputed facts show that the parties never once discussed the $1,800,000 claim during the negotiation of the Settlement Agreement, never mentioned that claim or the relevant parties to that claim in the Settlement Agreement itself, and did not involve the plaintiff's counsel of record in this case. Furthermore, the settlement amount is $5,107.84 -- the exact amount owed on the ABC Supply 622 Account.

Accordingly, in light of these facts, this court finds that the parties intended the Settlement Agreement to apply to the ABC Supply 622 Account only. Thus, the plaintiff's motion for summary judgment will be granted and the defendant's motion for summary judgment will be denied.

Since the court has concluded that the Settlement Agreement addresses only the ABC Supply 622 account, the court need not address the plaintiff's assertions that the Settlement Agreement is void or that Amcraft's counsel violated professional and ethical rules. In addition, given its determination on the motions for summary judgment, the court need not address the plaintiff's pending motion for a protective order. Therefore, that motion will be denied as moot.

## **ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's motion for summary judgment be and hereby is **granted**. (Docket #59).

**IT IS ALSO ORDERED** that the defendant's motion for summary judgment be and hereby is **denied**. (Docket #60).

**IT IS FURTHER ORDERED** that the plaintiff's motion for a protective order be and hereby is **denied** as moot. (Docket #53).

**IT IS ALSO ORDERED** that the parties shall appear for a telephonic status conference on Thursday, September 13, 2012, at 2:00 p.m. The court will initiate the call.

14

Dated at Milwaukee, Wisconsin this 30th day of August, 2012.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge

O:\CIV\Close_MSJ decision.doc